**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————

| | | |
|---|---|---|
| IN RE:  RESTRAINT OF ASSETS | ) | |
| CONTROLLED OR HELD BY OR FOR | ) | |
| THE BENEFIT OF BRIAN JAMES O'BRIEN | ) | |
| INCLUDING: | ) | |
| | ) | |
| REAL PROPERTY LOCATED | ) | Misc. No. 12-530 |
| AT 433 WEST BRIAR PLACE APT. 1C | ) | |
| CHICAGO, IL 60657, AND ALL FUNDS | ) | |
| CONTAINED OR FORMERLY CONTAINED | ) | |
| IN CERTAIN BANK ACCOUNTS AT JP | ) | |
| MORGAN CHASE BANK, BANK OF | ) | |
| AMERICA, AND WELLS FARGO BANK | ) | |

———————————————————

**UNITED STATES' EX PARTE APPLICATION TO ENFORCE AND REGISTER A
FOREIGN FORFEITURE JUDGMENT PURSUANT TO 28 U.S.C. § 2467(d)(1)
AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Applicant United States of America, by and through its undersigned attorneys,

respectfully requests that this Court enter an order to register and enforce a final United

Kingdom confiscation judgment pursuant to 28 U.S.C. § 2467(d)(1), against criminal proceeds

totaling approximately $305,000 controlled or held by or for the benefit of Brian O'Brien

(collectively, the "O'Brien Assets"), which was submitted on July 10, 2013,[1] through a formal

diplomatic request by the United Kingdom under the Instrument between the United States and

the U.K., signed December 16, 2004, implementing the Agreement on Mutual Legal Assistance

between the United States and the European Union, signed June 25, 2003, S. Treaty Doc. 109-

13.  The United Kingdom formally asked the United States to enforce a final forfeiture judgment

entered by a U.K. court against Brian O'Brien, and its request for enforcement of the

---

[1] The formal request was transmitted through the Department of Justice's Office of International Affairs to the Asset Forfeiture and Money Laundering Section on October 1, 2013, for execution.  Supplemental materials to the application were provided by the United Kingdom on February 17, 2014.

confiscation judgment has been certified by the Attorney General's designee, the Assistant Attorney General for the Criminal Division of the United States Department of Justice ("the AAG"), as being in the interest of justice.  *See* AAG Certification attached as Exhibit 1.

Accordingly, pursuant to 28 U.S.C. § 2467(c)(1) and (d)(1), the United States requests that this Court enforce the U.K. confiscation judgment and eventually enter a forfeiture judgment forfeiting the O'Brien Assets to the United States based upon the U.K. judgment.  Meanwhile, pursuant to the entry of the requested forfeiture judgment and in order to preserve and maintain the O'Brien Assets, the United States requests that this Court continue the restraint against the assets listed in the Court's October 9, 2012, Restraining Order, issue a writ of entry with respect to the real property identified in the Order, and order the United States to provide notice of this Application to persons known to the United States as having a potential property interest in the O'Brien Assets, all pursuant to Section 2467(d)(1), which provides this Court with authority to enter such orders as may be necessary to enforce a forfeiture judgment on behalf of a foreign nation.

## I.      JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides, in relevant part, that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## II.     APPLICATION

The United States seeks an Order from this Court to register, enforce, and give full faith and credit, and effect, to the certified U.K. Confiscation Judgment in order to forfeit the following U.S. located O'Brien Assets more specifically described as:

2

(1) Real property located at 433 West Briar Place, Apt. 1C, Chicago, IL 60657;

(2) JP Morgan Chase checking account number 851025072 held in the name of Brian J. O'Brien;[2]

(3) JP Morgan Chase savings account number 2936401310;

(4) Bank of America checking account number 004625333019;

(5) Bank of America savings account number 002916897567;

(6) Wells Fargo account number 1520110103;[3]

(7) Wells Fargo account number 9942546160; and

(8) Wells Fargo account number 9942546178.

All of the above assets are subject to the Court's October 9, 2012, Restraining Order, Misc. No. 12-530, DN 4.  O'Brien was given direct notice of this Court's entry of a restraining order against his assets.  O'Brien's assets are subject to the U.K. Confiscation Judgment of April 15, 2013, by the Southwark Crown Court.  *See* U.K. Confiscation Judgment attached as Exhibit 2. O'Brien received direct notice of the U.K. confiscation proceedings as well as the confiscation order.  *See* Affidavit of Marie-Claire Amuah, Case Lawyer, Serious Fraud Office, Proceeds of Crime Division (London, United Kingdom ("Affidavit")), ¶ 39, attached as Exhibit 3.

## III.   STATEMENT OF POINTS AND AUTHORITIES

Under Section 2467(c)(1), this Court has the authority to enforce a foreign forfeiture judgment provided that certain criteria are met.  Because each of the statutory requirements for enforcement has been satisfied, this Court should issue the requested order and an eventual forfeiture judgment in favor of the United States once all conditions of the proposed order have

---

[2] Each bank account subject to restraint is held solely in the name of Brian J. O'Brien.

[3] The referenced account number was incorrectly recorded by the U.K. in their schedule of assets attached to the U.K. Confiscation Judgment.  *See* Exhibit 2.  In the "schedule of assets", the last zero was omitted from the account number, thus, at present, the account number reads, "152011013".

been satisfied.

A.   **FACTUAL BACKGROUND**

1.   <u>Criminal Proceedings Against Brian O'Brien</u>

O'Brien's conviction stems from the share pushing operation called Secure Trade & Title ("ST&T") that O'Brien ran with his wife Lynne D'Albertson out of their home in East Sussex, England.  ST&T purportedly functioned as a secure payment funnel for stock purchases arranged out of numerous boiler rooms[4] across Europe, notably Black & White Investments SL ("B&W") in Barcelona, Spain.  B&W cold-called potential investors and through persistent and coercive sales tactics, sold over-valued and worthless shares, including shares in two companies with which O'Brien maintained exclusive agreements.  O'Brien set the sales strategy for the boiler rooms, devised fraudulent supporting documents, and drew up sales agreements; however, neither O'Brien nor his employees were licensed by U.K.'s Financial Services Authority ("FSA") as securities dealers.   O'Brien led victims to believe that their investments were safe because they were not sending money directly to the salespeople in Spain and Ireland but to independent, third party handlers.  As a result of O'Brien and his co-conspirator's fraud, investors sustained losses of more than £4 million GBP ($6,277,880 USD).

On September 24, 2009, a restraint order was entered by the Central Criminal Court in London against O'Brien.  *See* Exhibit 3 at ¶ 25.  Shortly after the issuance of the U.K. court's September 24, 2009, restraining order, O'Brien fled the country.  *Id.*  O'Brien was held in contempt for failing to comply with the disclosure and repatriation obligations set forth in the

---

[4] "Boiler room" is a term used to describe sales operations in which aggressive salespeople cold-call potential customers, often located in a different country, to peddle speculative or even fraudulent securities.  The salespeople discourage outside research, emphasize the short term, low-risk, high-yield nature of the investment, and use catchphrases that characterize the investments as certain and rare opportunities to make a great profit.  A "recovery room" describes an operation, often affiliated with one or multiple boiler rooms, that offers concerned investors a "way out" of their worthless investments, but, in reality, further defrauds them by selling them additional speculative or fraudulent shares as a precondition to buying back their worthless shares.

court's order and a warrant for his arrest was issued.  In June 2010, O'Brien was located in

Chicago, arrested by U.S. authorities, and extradited to the United Kingdom on December 1,

2010.  *Id.*

     O'Brien's trial began in London in January 2012, and on March 2, 2012, O'Brien was

convicted in the Southwark Crown Court of numerous offenses including a conspiracy to defraud

in violation of common law, securities fraud in violation of section 23 of the U.K.'s Financial

Services and Markets Act 2000, and money laundering in violation of section 327(a)-(d) of the

U.K.'s Proceeds of Crime Act 2002.  *Id.*  at ¶¶ 35-36.  As a result of his conviction, O'Brien was

sentenced to eight years imprisonment and confiscation proceedings initiated against specified

properties set forth in the Southwark Crown Court's 2009 Restraint Order.  *Id.*  at ¶¶ 35-36.  On

April 15, 2013, the Southwark Crown Court entered a confiscation order against O'Brien.  *Id.*  at

¶ 38.  As set forth in the confiscation order, O'Brien was found to have derived a benefit in the

amount of £9,337,938.53 (GBP) and was found to be in control of £364,983.53 in realizable

assets.  *Id.*  O'Brien was then given until October 15, 2013 to satisfy the confiscation order

entered against him.  *Id.*  O'Brien failed to meet that deadline and the United Kingdom now

seeks enforcement of its final and non-appealable April 15, 2013, confiscation order.  *Id.* at 44.

        2.     United States District Court Enforcement Proceedings Under 28 U.S.C.
               § 2467(d)(3)

     In August 2012, the United Kingdom sent a formal request to the United States seeking

the enforcement of a 2009 restraining order against O'Brien's assets totaling approximately

$305,000.  Acting upon the July 2012 U.K. Supplemental MLAT request, on October 5, 2012,

the United States applied to the District Court for the District of Columbia for an order enforcing

the U.K. restraining order pursuant to 28 U.S.C. § 2467(d)(3), Misc. No. 12-530, DN 2.  The

District Court issued the requested restraining order on October 10, 2012, against the contents of

seven bank accounts controlled and one condominium unit owned by O'Brien.[5]  AFMLS

provided notice to persons known to have a possible legal interest in the restrained assets by

sending a request to the United Kingdom Central Authority asking that service of notice be made

by direct service on Brian O'Brien.  On March 4, 2013, the United Kingdom sent confirmation

of personal service of both the U.S. Restraining Order and the October 24, 2012, Notice of *Lis*

*Pendens* upon Brian O'Brien.  *See* Witness Statement of Stacey Barnes, Dated February 14,

2013, attached as Exhibit 4.

### B.    ARGUMENT

#### 1.    This Court Has Authority to Enforce Foreign Forfeiture Judgments that the Assistant Attorney General Has Certified for Enforcement

Pursuant to Section 2467, upon application of the United States, federal district courts are

authorized to enforce a foreign judgment of forfeiture obtained in connection with forfeiture

proceedings in another country, "as if the judgment had been entered by a court in the United

States." 28 U.S.C. § 2467(c)(1).  This provision enables the United States to comply with treaty

obligations requiring it to freeze, seize, and forfeit proceeds and instrumentalities of foreign

crimes.  Additionally, reciprocity is a basic tenet in international cooperation, and if the United

States is to expect other nations to enforce forfeiture orders issued by U.S. courts, it must have

legislation to render reciprocal assistance to foreign tribunals.

---

[5] The United States was advised that the homeowner's association for the condominium community in which O'Brien's unit is located obtained, on May 5, 2013, an Illinois state circuit court order, pursuant to the Illinois Forcible Entry and Detainer Act, granting the association temporary possession of the unit for the sole purpose of leasing the same to a third party in an effort to recoup more than $10,000 in overdue association fees and related expenses that O'Brien has failed to pay.  The association leased the unit to a third party for several months.  As of April 17, 2014, counsel for the condominium association advised that the condominium had been vacated and there has been some damage to the unit as a result of flooding issues.  Recently, on June 23, 2014, after consultation and agreement with counsel for the association, representatives from the U.S. Marshals inspected the unit to assess its current overall condition. As a result of water damage caused by a pipe burst on the premises, the U.S. Marshals roughly estimate that the unit will require at least $8,000 in repairs before it can be sold.

2.      The Requirements for Recognizing a Foreign Forfeiture Judgment Have
        Been Satisfied

As set forth below, three elements must be met for the enforcement of a foreign forfeiture

judgment under Section 2467:  (1) the United States and the foreign nation must be parties to an

international agreement providing for mutual forfeiture assistance; (2) the conduct giving rise to

forfeiture under foreign law must constitute conduct that would give rise to forfeiture if

committed in the United States; and (3) the Attorney General, in the interest of justice, must have

certified the judgment for enforcement.  *See* 28 U.S.C. § 2467(a)(1)-(2) and (b)(1)-(2).  Because

each of these elements has been met, this Court should enforce the U.K. confiscation judgment

and issue the requested proposed orders.

First, Section 2467 provides that a "foreign nation" may request the enforcement of a

forfeiture or confiscation judgment.  A "foreign nation" is defined as "a foreign jurisdiction with

which the United States has a treaty or other formal international agreement in effect providing

for mutual forfeiture assistance."  28 U.S.C. § 2467(a)(1).  As established in the earlier

application to enforce the U.K. restraining order, the United States and the United Kingdom are

parties to a bilateral mutual legal assistance treaty ("MLAT") signed in 1994, as well as a

freestanding Instrument regarding the effect of the 2003 United States-European Union mutual

legal assistance treaty on the preexisting United States-United Kingdom MLAT.[6]  The MLAT

and Instrument both contain a non-exhaustive list of legal assistance items available to the

Requesting State under the Treaty.  *See* MLAT, art. 1; Instrument, art. 1.  Requests for assistance

---

[6] *See* Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, U.S.-U.K., Jan. 6, 1994, S. Treaty Doc. No. 104-2 (1996) (the "MLAT"); *see also* Instrument as Contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union Signed 25 June 2003, as to the Application of the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters Signed 6 January 1994, U.S.-U.K., Dec. 16, 2004, S. Treaty Doc. No. 109-13 (2010) (the "Instrument") (reaffirming and amending the 1994 bilateral MLAT between the U.S. and the U.K.).

concerning the identification, tracing, freezing, seizing, and forfeiting of criminal proceeds are specifically envisioned. *See* MLAT*.*, art. 16; Instrument, art. 16. The Treaty further provides that "[t]he courts of the Requested [State] shall have authority to issue subpoenas, search warrants, *or other orders necessary to execute the request*." MLAT, art. 5; Instrument, art. 5 (emphasis added). Article 16 of the MLAT and the Instrument confirm that "[t]he Parties shall assist each other in proceedings involving . . . forfeiture of the proceeds and instrumentalities of crime and in relation to proceedings involving the imposition of fines related to a criminal prosecution." *See* MLAT, art. 16; Instrument, art. 16. Further, "proceedings" are defined as "proceedings related to criminal matters, [including] any measure or step taken in connection with the investigation or prosecution of criminal offences, including the freezing, seizure or forfeiture of the proceeds and instrumentalities of crime, and the imposition of fines related to a criminal prosecution." *See* MLAT, art. 19; Instrument, art. 19. Accordingly, the first criterion for enforcement is satisfied because the United States and the United Kingdom are parties to agreements clearly authorizing forfeiture assistance.

Second, to be enforceable, a "final foreign forfeiture judgment" must order the forfeiture of property based on conduct that "would constitute a violation or offense for which property could be forfeited under Federal law if the offense were committed in the United States." 28 U.S.C. § 2467(a)(2)(A). A "forfeiture or confiscation judgment" is defined as:

A final order of a foreign nation compelling a person or entity
(A) to pay a sum of money representing the proceeds of an offense described in … any violation of foreign law that would constitute a violation or an offense for which property could be forfeited under Federal law if the offense were committed in the United States, or any foreign offense described in section 1956(c)(7)(B) of Title 18, or property the value of which corresponds to such proceeds; or
(B) to forfeit property involved in or traceable to the commission of such an offense.

The April 15, 2013, confiscation order issued by the Southwark Crown Court directing

O'Brien to satisfy with available/realizable assets the amount to which he was found to have benefitted from his criminal conduct constitutes a "forfeiture or confiscation judgment" for purposes of 28 U.S.C. § 2467.[7]  O'Brien's U.S. assets, which are currently subject to restraint pursuant to this Court's 2012, order, represent the realizable assets that O'Brien has been ordered to pay in satisfaction of the U.K. confiscation order.

Moreover, the "dual forfeitability" requirement set forth in Section 2467(a)(2)(A), has been satisfied.  The underlying criminal conduct for which O'Brien was convicted would also have violated U.S. criminal laws giving rise to forfeiture had those offenses been perpetrated here.  The Crown's indictment and conviction of O'Brien was premised upon his operation of a securities sales operation that employed numerous, material misrepresentations to solicit funds from would-be investors and O'Brien's subsequent efforts to launder the proceeds of his fraudulent scheme.  If the same acts were committed in the United States, the proceeds of such crimes would be forfeitable under the federal money laundering statutes, based on the following specified unlawful activities for money laundering: 15 U.S.C. § 78ff (securities fraud) and 18 U.S.C. §§ 1341 and/or 1343 (mail and wire fraud).  *See* 18 U.S.C. § 1956(c)(7)(a) (defining specified unlawful activities ("SUAs")); § 1961(1) and (1)(D) (categorizing mail and wire fraud as SUAs, and fraud in the sale of securities as an SUA, respectively); *see also* § 981(a)(1)(A) (civil forfeiture of property involved in, or proceeds traceable to, a money laundering transaction); § 982(a)(1) (criminal forfeiture of the same).  Furthermore, the securities fraud committed by O'Brien in mailing and emailing false and misleading sales documents and share

---

[7] Central to the issuance of a confiscation order under the Proceeds of Crime Act of 2002 ("POCA") is a determination of whether the defendant has "benefitted" from his criminal conduct.  *See* Exhibit 3, Annex B, ¶ 3. The value of the "benefit" obtained by the defendant is the "recoverable amount" a defendant will be ordered to pay for purposes of confiscation.  *Id.* at ¶ 3(c).  If the value of the known realizable assets of a defendant is less than the actual benefit obtained by the defendant, the court will only enter an order as to the amount of known available assets that can be recovered.  *Id.* at ¶ 3(d).  In light of these principles, the amount O'Brien has been ordered to pay is far less than the calculated amount of the "benefit" he realized from his fraud.

purchase agreements also gives rise to forfeiture independently of any money laundering violation.  *See* § 981(a)(1)(c).

Third, the U.K. Confiscation Judgment was certified by the Assistant Attorney General for the Criminal Division ("AAG"), Leslie Caldwell, on June 2, 2014.  *See* AAG Certification, Exhibit 1.  In seeking to have the U.K. judgment certified for enforcement, the U.K. was required by Section 2467(b)(1) to provide:  (a) a summary of the facts of the proceedings resulting in forfeiture; (b) a certified copy of the forfeiture judgment; and (c) an affidavit establishing that the foreign nation provided due process notice to all persons with an interest in the property sufficient to permit them to defend the charges and the forfeiture and that the judgment is in force and not subject to appeal.  Weighing this information, the AAG certified that it was in the interest of justice to certify the U.K.'s request for enforcement of its confiscation judgment.  *See* 28 U.S.C. § 2467(b)(2); AAG Certification, Exhibit 1.  The AAG's determination is not subject to judicial review.  *See* 28 U.S.C. § 2467(b)(2).  Thus, the third criterion for enforcement is met, and ample justification exists for enforcement of the U.K. confiscation judgment in the United States.

      3.      <u>None of the Defenses to Enforcement Provided in Section 2467(d)(1) Are Available in this Case.</u>

Section 2467(d)(1) provides that a U.S. district court "shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation" unless the court finds that (1) the judgment was rendered under a system of law incompatible with the requirements of due process; (2) the foreign court lacked personal jurisdiction over the defendant; (3) the foreign court lacked jurisdiction over the subject matter; (4) the foreign nation did not provide notice of the proceedings to persons with an interest in the property in sufficient time to enable them to

defend against the confiscation; and (5) the judgment was obtained by fraud.  28 U.S.C. 2467(d)(1).

The U.K. affidavit fully describes a system of legal practice which "provides tribunals or procedures" fully compatible with the requirements of due process of law.  Forfeiture in the U.K. is governed by POCA.  *See* Exhibit 3 at ¶ 13.  Confiscation orders in the United Kingdom are *in personam* orders entered against specified defendants rather than in *rem* orders limited to specific assets.  See *Id.* at ¶ 22.  POCA authorizes the entry of confiscation orders against convicted persons who have benefitted from criminal conduct.  *Id.*  at ¶¶ 1,3.  Pursuant to POCA, O'Brien received notice of the confiscation proceedings and had an opportunity to appeal the entry of the confiscation order.  *Id.* at 39.  U.K. authorities indicate that O'Brien would have been made aware that confiscation proceedings would be commenced against him at the earliest date of September 24, 2009.  *Id.*  O'Brien also would have received further notice of pending confiscation proceedings when sentenced on April 23, 2012.  *Id.*  Upon entry of the U.K. confiscation order on April 15, 2013, O'Brien had 28 days from the entry of that order to file an appeal.  *Id.*  Accordingly, the U.K. confiscation proceedings involving O'Brien were consistent with due process.

In addition, U.K. authorities have advised that the Southwark Crown Court had personal jurisdiction over O'Brien because at the time of the criminal conduct he resided in the United Kingdom and all or part of the criminal conduct occurred in the United Kingdom.  U.K. authorities have also advised that the Southwark Crown Court had subject matter jurisdiction over the offenses forming the basis of O'Brien's conviction and possessed the requisite authority to issue confiscation judgments consistent with POCA.

Finally, there is no indication that the U.K. Confiscation Judgment or O'Brien's

conviction were obtained by fraud.

    4.    <u>The United States Will Provide Notice of this Application to the Interested Parties in the United States and United Kingdom, with Publication of Notice of Forfeiture on the Official Government Asset Forfeiture Website</u>

An application under Section 2467 to enforce and register the final U.K. Confiscation Judgment is not a separate civil forfeiture action, but rather is an ancillary enforcement proceeding in which this Court, upon an application filed by the United States, may enter the requested forfeiture judgment in favor of the United States as if the U.K. judgment had been entered by a court in the United States. *See* 28 U.S.C. § 2467(c)(1). However, Section 2467 does not detail a procedure for enforcing the foreign judgment except to indicate that it should be done "as if the judgment had been entered by a court in the United States." 28 U.S.C. § 2467(c)(1).  Accordingly, to provide notice of the instant U.S. enforcement application to parties who may have an interest in the property sought for forfeiture, the United States asks the Court to impose upon the United States the notice requirements that are provided in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture (hereinafter "Supplemental Rule G"), which was designed for use in U.S. civil forfeiture actions. Section 2467 specifically permits the Court "to enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation . . . ." 28 U.S.C. § 2467(d)(1). The United States, therefore, respectfully requests that this Court issue an order permitting the United States to give notice of this Application to enforce the U.K. Confiscation Judgment in the same manner and form as if the United States had filed its own civil forfeiture action against the O'Brien Assets.  A proposed order is attached as Exhibit 5.  A similar order was obtained in *In re: Restraint of Assets Controlled or Held By or for the Benefit of Raul Mari*, Misc. No. 1:08-mc-00556 (RCL), DN 15.

Consistent with this notice requirement, upon the filing of this Application with the Court, the United States will provide notice to O'Brien and other interested parties located in the United States and United Kingdom in accordance with Supplemental Rule G and will request that the U.K. provide service of notice of the same to O'Brien.  In addition to providing direct notice to interested parties, the United States will follow the procedures set out in the Federal Rules of Civil Procedure, including Supplemental Rule G, by publishing the Notice of Forfeiture on the website www.forfeiture.gov for 30 days.  Further, the United States requests that pursuant to Supplemental Rule G(5), once all interested parties are noticed, the claimants, if any, are permitted to file a claim or pleading to challenge the Application for the forfeiture of the O'Brien assets to the United States within 35 days after notice is received or 30 days after publication on www.forfeiture.gov is completed, whichever is later, if actual direct notice was not completed and in order to raise any statutory challenges permitted under Section 2467(d)(1).  Challenges in this Court, if any, can be brought only under limited grounds in accordance with Section 2467(d)(1), as the underlying basis for forfeiture of the O'Brien Assets—violations of U.K. criminal law—has been fully litigated and decided by the U.K. courts. If no claim or defense is interposed and the time for filing such pleadings expires, the United States, upon filing a proof of notice and publication, will notify this Court of such status, and will request that this Court enter a proposed final forfeiture judgment in favor of the United States against the O'Brien Assets.

5.    <u>Writ of Entry</u>

Section 2467(d)(1) states that this Court "shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation." In federal civil and criminal forfeiture actions, this Court has analogous authority to take any action necessary to preserve property subject to a forfeiture proceeding. *See* 18 U.S.C. § 981(j)(1) (granting district courts the

13

authority to "enter a restraining order or injunction . . . or take any other action to seize, secure,

maintain, or preserve the availability of property subject to civil forfeiture"); 21 U.S.C.

§ 853(e)(1)(A) (permitting district courts "[u]pon application of the United States [to]

enter a restraining order or injunction . . . or take any other action to preserve the availability of

property" in a criminal forfeiture proceeding); *see also United States v. Melrose E. Subdivision*,

357 F.3d 493, 499 (5th Cir. 2004) (characterizing Section 853(e)(1)(A) as "the criminal

analogue" of Section 983(j)(1)(A)).  Under Sections 983(j)(1) and 853(e)(1)(A), district courts

may enter a writ of entry for inspection and appraisal of real property subject to civil and

criminal forfeiture actions, respectively.  *See United States v. Real Prop. Located at 11211 E.*

*Arabian Park Drive, Scottsdale, Ariz.*, 379 F. Supp. 2d 1058, 1062 (D. Ariz. 2005) ("The basis

for judicial authorization of writs of entry for inspection and appraisal is 18 U.S.C.

§ 983(j)(1)."); *United States v. Khan*, 11-cr-00276 (EMS), Writ of Entry (D.D.C. Mar. 5, 2012)

(granting a writ of entry for purposes of appraisal and preservation of real property under

§ 853(e)(1)(A)).  Accordingly, this Court has the same authority pursuant to Section 2467(d)(1)

to issue a writ of entry for purposes of inspection and appraisal of real property.  *See United*

*States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004) ("It is an elementary principle of statutory

construction that similar language in similar statutes should be interpreted similarly.").

The United States requests that this Court issue a writ of entry for the U.S. Marshals

Service or its designee for the purposes of inspection, appraisal, and preservation of the real

property located at 433 West Briar Place, Apt. 1C, Chicago, IL 60657, which property is subject

to this Court's October 10, 2012, restraining order and the U.K. Confiscation Judgment.  A

proposed writ of entry is attached hereto as Exhibit 6.[8]

---

[8] As previously noted, the condominium association, which has obtained a temporary order for possession of the property to satisfy fee arrearages, consented to an informal inspection by a U.S. Marshals Service representative for

IV.     **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Court enforce the United Kingdom Confiscation Judgment, consistent with U.S. treaty obligations under the MLAT, by imposing continued restraint of and by entering a forfeiture order against the U.K. assets pursuant to this Court's authority under 28 U.S.C. § 2467(c)(1) and (d)(1). The United States further requests that this Court issue a writ of entry permitting the U.S. Marshals Service to enter the real property located at 433 West Briar Place, Apt. 1C, Chicago, IL 60657 for purposes of appraisal, inspection, and preservation.

Respectfully submitted,


JAIKUMAR RAMASWAMY, Chief
JACK DE KLUIVER, Asst. Dep. Chief


By:      _____/s/_____

Teresa Turner-Jones
Senior Trial Attorney
Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, D.C.  20005

Telephone:     (202) 514-1263
Fax:               (202) 616-2547

Attorneys for Applicant
UNITED STATES OF AMERICA

---

purposes of inspecting recent damage to the property caused by flooding on the premises.  The informal inspection occurred on Monday, June 23, 2014.